1   JOHN M. MCCOY III, Cal. Bar No. 166244
    E-mail: mccoyj@sec.gov
2   FINOLA MANVELIAN, Cal. Bar No. 180681
    E-mail: manvelianf@sec.gov
3   MARSHALL SPRUNG, Cal. Bar No. 188253
    E-mail: sprungm@sec.gov
4   SAM S. PUATHASNANON, Cal. Bar No. 198430
    E-mail: puathasnanons@sec.gov
5

6   Attorneys for Plaintiff
    Securities and Exchange Commission
7   Rosalind R. Tyson, Regional Director
    Andrew G. Petillon, Associate Regional Director
8   5670 Wilshire Boulevard, 11th Floor
    Los Angeles, California 90036-3648
9   Telephone:   (323) 965-3998
    Facsimile:   (323) 965-3908
10

11                  UNITED STATES DISTRICT COURT

12                 CENTRAL DISTRICT OF CALIFORNIA

13                       SOUTHERN DIVISION

14                                              SACV09-0315 AG MLGx

15  SECURITIES AND EXCHANGE            Case No.
    COMMISSION,
16                                     **COMPLAINT**
            Plaintiff,
17
        vs.
18
    QUEST SOFTWARE, INC.,
19  VINCENT C. SMITH, JOHN J.
    LASKEY, and KEVIN E. BROOKS,
20
            Defendants.
21

22

23

24

25

26

27

28

1        1.      This action involves improper stock option backdating at Quest
2   Software, Inc. ("Quest"), which resulted in the issuance of financial statements that
3   misstated stock-based compensation expenses by over $100 million.  Between
4   December 1999 and August 2002, Quest regularly backdated employee stock
5   option grants to obtain low exercise prices without recording compensation
6   expenses, which allowed it to report materially inflated income or understated
7   losses.  The fraudulent scheme, facilitated by Quest's most senior executives,
8   involved options to acquire approximately 11 million shares of common stock
9   spread over 28 separate grants, resulting in a $113.6 million restatement of
10  operating income for the fiscal periods 1999 through 2005.

11       2.      The executives involved in the backdating include Vincent C. Smith
12  ("Smith"), Quest's former chief executive officer and chairman, and current
13  executive chairman; John J. Laskey ("Laskey"), its former chief financial officer;
14  and Kevin E. Brooks ("Brooks"), the former controller and chief accounting
15  officer, and currently Quest's vice president for sales programs (collectively, the
16  "Individual Defendants"; collectively with Quest, "Defendants").

17       3.      During the relevant period, Laskey created, with Smith's approval,
18  Quest's policy of using hindsight to date stock option grants to coincide with
19  monthly low stock prices.

20       4.      Smith served on the board of directors and signed unanimous written
21  consents ("UWCs") memorializing numerous grants.  These UWCs were false
22  because they used grant dates selected with hindsight and claimed that the grants
23  were made with strike prices at the "current fair market value" even though no
24  approvals were obtained on the alleged grant date and the board did not execute the
25  documents until well after the alleged grant date.

26       5.      Smith, Laskey, and Brooks each knew about the use of hindsight to
27  backdate stock option grants, and all understood that options granted below fair
28  market value, or "in-the-money", required Quest to record compensation expense.

6. Moreover, each of the Individual Defendants knew that Quest's outside auditors reviewed option grants, and each engaged in efforts that made detection of the backdating more difficult for the auditors.

7. As a result of the acts alleged in the Complaint, Quest, among other things, violated Section 17(a)(2) and 17(a)(3) of the Securities Act of 1933 ("Securities Act"), falsified books and records, and falsely reported its financial results.

8. By engaging in the acts alleged in this Complaint, Smith, Laskey, and Brooks, among other things, violated Section 17(a)(2) and 17(a)(3) of the Securities Act, falsified books and records, made false statements to Quest's outside auditors, and aided Quest's filing of false financial results. The Commission seeks an order (1) enjoining the Defendants from future violations of the securities laws, (2) requiring Brooks to disgorge his ill-gotten gains and pay prejudgment interest, (3) requiring the Individual Defendants to pay civil monetary penalties, and (4) providing other appropriate relief.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d)(1), and 22(a) of the Securities Act, 15 U.S.C. §§ 77t(b), 77t(d)(1), and 77v(a), and Sections 21(d), 21(e), and 27 of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78u(d), 78u(e), and 78aa. Defendants have directly or indirectly made use of the means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange in connection with the transactions, acts, practices, and courses of business alleged in this Complaint.

10. Venue is proper in this district pursuant to Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a), and Section 27 of the Exchange Act, 15 U.S.C. § 78aa, because Defendants resided within this district during the relevant time period and certain of the transactions, acts, practices, and courses of conduct

1   constituting violations of the laws alleged in this Complaint occurred within this
2   district.

3                                    **DEFENDANTS**

4          11.    Quest Software, Inc. is a California corporation headquartered in
5   Aliso Viejo, California.  Founded in 1987, Quest creates and sells productivity
6   software designed to manage its clients' existing applications and databases.  Since
7   its initial public offering on August 13, 1999, and throughout the relevant period,
8   Quest's common stock was registered under Section 12(g) of the Exchange Act
9   and traded on the Nasdaq National Market under symbol "QSFT."

10         12.    Vincent C. Smith, age 44, resides in Newport Beach, California.  He
11  served as Quest's chairman and CEO from 1998 until October 10, 2008, when he
12  was appointed executive chairman of the board of directors.  As reported in a Form
13  4 filed on May 8, 2008, Smith holds directly and indirectly 31,062,004 shares of
14  Quest stock, approximately 29% of the company.

15         13.    John J. Laskey, age 59, is a resident of Newport Coast, California.  He
16  served as Quest's chief financial officer from October 1998 until he resigned in
17  February 2001.

18         14.    Kevin E. Brooks, age 38, is a resident of Rancho Santa Margarita,
19  California.  He served as Quest's controller and principal accounting officer from
20  1999 until October 26, 2006, when he was reassigned to a non-accounting/finance
21  role as a result of Quest's internal investigation into its stock option grant
22  practices.  Brooks has been licensed as a CPA in California since November 1992,
23  although his license is currently inactive.

24                                       **FACTS**
25  A.     **Backdating of Stock Options at Quest**

26         15.    In December 1999, Laskey recommended to Smith a policy under
27  which the company would pool new hires by month and grant stock options to
28  each pool using the lowest price of that particular month.  Smith approved the

1  policy, and the company applied it retroactively so that the October 1999 pool

2  received a $22.94 exercise price, the November 1999 pool received a $32.06

3  exercise price, and the December 1999 pool received a $40.25 exercise price.

4      16.   This practice continued through August 2002, resulting in over 8

5  million shares of backdated stock options to rank-and-file employees, accounting

6  for $89.6 million of the restatement.

7      17.   Quest documented approval of its stock option grants almost

8  exclusively through UWCs, which contained a date that purported to be the grant

9  date. However, no approvals were obtained from the board or the compensation

10  committee on the purported grant dates. Laskey prepared or directed the

11  preparation of the UWCs until about April 2000.

12      18.   During the relevant period, UWCs were typically circulated for

13  signature long after the alleged grant date. Some UWCs contain fax headers that

14  reflect transmission dates long after the grant date, indicating that the UWCs were

15  signed on the day set forth in the fax transmission header.

16      19.   Moreover, the UWCs stated that the "Board hereby determines that

17  the **current** fair market value per share of the common stock is . . ." (emphasis

18  supplied), a statement rendered false by the fact that the Board did not actually

19  meet, discuss, or approve the grant on the alleged grant date and the UWCs were

20  not executed until much later.

21      20.   The UWCs typically referred to an attached exhibit that listed the

22  names of the grantees and the number of shares each would receive. During the

23  relevant period, however, many UWCs presented to the directors for signature

24  lacked the exhibits. Board members, knowing that Smith had reviewed or would

25  review the grantee lists, did not concern themselves with the identities of the

26  grantees, relying instead on the efforts of Smith and others in compiling the

27  grantee lists. On occasion, the grantee list was changed even after the UWC was

28  signed, and long after the date of the UWC. Once the UWC was formally signed,

1   the CFO would inform the stock plan administrator to process the grants and send
2   out the award notices to the option grantees.

3       21.    Quest did not uniformly apply the policy that Laskey created, instead
4   using hindsight to postpone certain grants for a particular month if it meant lower
5   exercise prices could be obtained.

6       22.    In the first quarter of 2000, Quest's stock price, on the rise since the
7   IPO, became more volatile, reaching a high of $97.50 on March 10, 2000 and a
8   low of $26.50 on April 14, 2000.  As a result, the stock plan administrator reported
9   to Laskey on April 4, 2000, "Also another note from Vinny [Smith].... There will
10  NOT be any options grants for March. He wants them to be granted on April 3rd,
11  due to the price being lower then the 'lowest price' in March [sic]." The company
12  ultimately made the grant on April 14, 2000, which was the lowest price in April
13  and included the first post-IPO, company-wide grant.

14      23.    The list of grantees, though, was not finalized until at least July 3,
15  2000. On that day, the stock plan administrator informed Laskey and Brooks that
16  she needed to revise the grantee list for April and asked whether she should send
17  revised minutes to the outside directors.  Laskey responded, "I would just change
18  the exhibit to reflect the additions, no need to recycle them." The April 14, 2000
19  grants resulted in the largest unreported compensation expense, approximately $51
20  million, nearly half of the restatement.

21      24.    Brooks, although incorrectly remembering the grant date to have been
22  in March, refers to this grant nearly one year later in a January 3, 2001 e-mail
23  asking whether Quest will move a grant from December 2000:

24              Are we going to move the big option grant to yesterday? If we
25              do, then I don't have to worry about it for this year's audit.
26              That would buy you guys more time to decide. However, I
27              think it would be good to get the info out to the staff soon since
28              we passed on the traditional holiday bonus. Additionally in

1    March when we had the last big drop, we actually granted 0
2    options in February even to new starts and made them March to
3    take advantage of the $26 price.  We need to let [the stock plan
4    administrator] know if we are going to do that again for
5    December new starts.

6    25.    Quest did, in fact, delay the December 2000 grant to January 2, 2001,
7  when Quest stock closed at $23.69, the lowest price in December 2000 and January
8  2001.  The UWC approving the grant was dated January 2, even though no
9  approvals were obtained on the purported grant date.  Indeed, the UWC was not
10 signed by the two compensation committee members until May 9, 2001.

11   26.    Grantees who should have received options in January, February, and
12 March 2001 became part of a March 28, 2001 grant, a date selected with hindsight
13 delayed to take advantage of Quest's falling stock price.

14   27.    During the relevant period, the board or the compensation committee
15 approved a total of 28 stock option grants to officers under Section 16 of the
16 Exchange Act and rank-and-file employees, which resulted in a $113.6 million
17 restatement of operating income for the fiscal periods 1999 through 2005.  Other
18 than one grant approved during an actual board meeting on March 28, 2001, no
19 contemporaneous documentation exists to support the grant dates.

20 **B.    Quest's Efforts to Avoid Compensation Expenses**

21   28.    Quest's stock option practices during the relevant period were
22 designed to avoid or reduce accounting charges for compensation expense
23 associated with stock options.  Smith, Laskey, and Brooks knew that in-the-money
24 options resulted in compensation expense.  Smith, Laskey, and Brooks were also
25 aware that the company granted non-backdated, in-the-money options, which the
26 company properly expensed.  Such options usually arose out of an agreement to
27 provide a specific exercise price in connection with an acquisition or to recruit a
28 key employee.  To track such compensation, Quest's accounting department

1  maintained a spreadsheet entitled "Cheap Stock Amortization."

2      29.    Even when a particular exercise price was promised, Quest sometimes

3  attempted to reduce the compensation expense by manipulating grant dates.  For

4  example, in recruiting one employee, the company promised 40,000 stock options

5  with a negotiated strike price of $26.50.  In response to an e-mail seeking approval

6  to make the grant on October 4, 2000, Smith wrote:

7              There may be a way to avoid the comp charge.  Give me until

8              Tuesday of next week to look into this one.  Make sure we get it

9              down then.  I would like to make the grant in September

10             because the strike price is $46 so worst case the comp charge is

11             only $20 per share or a MERE $800K.

12     30.    Nine days later, Smith wrote, "we may push out further. . . . as I said

13 we may try to capture a lower price."  Eventually, a decision was made to grant the

14 options on October 30, 2000, when Quest's stock closed at $35.98.  However, on

15 November 29, 2000, Brooks suggested that the options should be "erased" and

16 granted on that day because the stock price, $28.81, would help to reduce the

17 compensation expense further.

18 **C.**    **Quest's Efforts to Avoid Auditor Scrutiny of the Backdating**

19     31.    The close of fiscal quarters created urgency to complete the grant

20 process at Quest.  Management was aware that stock options had to be finalized

21 prior to the end of quarterly audits by Quest's outside auditors.  Numerous written

22 communications reflect the Individual Defendants' concern that backdated option

23 grants be finalized before the review or audit so as not to arouse the auditors'

24 suspicions.  For example:

25     a.    On January 9, 2000, Smith asks Laskey "how many more days

26           can we still give out Q4 options?"  Laskey asks Smith to finish

27           by January 11 because he needs "to give [the UWCs] to the

28           auditors and also finish off the diluted shares calculation."

b.     On June 22, 2000, Brooks tells a department head that he must obtain approval from Smith for additional option grants before the end of June "or it will be impossible to give them the April price," suggesting that paperwork supporting the grant had to be completed before the outside auditors began their work in early July.

c.     On November 29, 2000, in connection with finalizing a grant to a particular employee, Brooks states that "crossing quarters is what we really need to avoid."

d.     On January 4, 2001, Smith agrees to an e-mail suggestion that the company pull back grants purportedly made on October 30, 2000 with an exercise price of $36 and instead grant them at $27, the lowest price in November, because "auditors have not yet seen them."

32.     By November 2000, the auditors had become suspicious of Quest's accounting for stock options generally, as reflected in an e-mail from Brooks to Smith and Laskey, among others:

> Due to the numerous changes we have been making to past periods [of stock option grants, the auditors are] growing very skeptical that we are properly accounting for our stock option activity. As a result, they are testing a higher percentage of activity than they normally would. We really should try and regain their confidence so that the level of scrutiny drops back down. Ultimately, less scrutiny gives us more flexibility. . . .

33.     Despite apparent skepticism, the outside auditors did not uncover Quest's stock option backdating, in part due to the efforts of Smith, Laskey, and Brooks, which prevented the auditors from detecting the misconduct.

**D.     Quest's Misleading Disclosures and Concealment of Accounting Consequences**

34.     Quest, through Smith, Laskey, and Brooks, made false and misleading disclosures related to stock option grants in its periodic reports and proxy statements, which were incorporated into its registration statements.  In addition, financial statements rendered false and misleading through omission of the compensation expenses continued to appear in Quest's periodic reports through 2005.

**1.     Forms 10-K and 10-Q**

35.     In all of its periodic reports during the relevant period, Quest represented that it applied Accounting Principles Board Opinion No. 25, *Accounting for Stock Issued to Employees* ("APB 25").  Under APB 25, a public company is allowed to grant stock options to employees without recording an expense so long as the options are granted at-the-money.  However, if a company grants "in-the-money" options, it is required to record as an expense on its financial statements the difference between the exercise price and the quoted market price on the "measurement date" over the vesting period of the options. The measurement date, as defined by APB 25, is the first date on which the following information is known: (i) the number of options that an individual employee is entitled to receive, and (ii) the exercise price.

36.     Quest's financial statements included in its Forms 10-K and 10-Q were not prepared in accordance with APB 25 because Quest failed to record compensation expenses for backdated stock options that were in-the-money at the time of grant.  As a result, none of Quest's audited financial statements between 1999 and 2005 or its unaudited quarterly financial statements during that period were prepared in accordance with Generally Accepted Accounting Principles, or GAAP.  Quest's restatement disclosed that it failed to report material amounts of compensation expenses required by GAAP, and thus overstated (understated) its

operating income (loss) between 1999 and 2005, as follows:

| Fiscal Year Ended 12/31 | Quest's Operating Income (Loss) As Originally Stated | Unrecognized Compensation Expense | Percentage By Which Operating Income (Loss) Was Overstated (Understated) |
|---|---|---|---|
| 1999 | $4,468,000 | $184,127 | 4% |
| 2000 | ($29,876,000) | $12,444,871 | (29.4%) |
| 2001 | ($53,701,000) | $18,981,087 | (26.12%) |
| 2002 | $9,857,000 | $28,110,278 | (154%) |
| 2003 | $25,982,000 | $23,538,001 | 963.1% |
| 2004 | $63,634,000 | $19,789,110 | 45.1% |
| 2005 | $74,076,000 | $10,579,087 | 16.7% |
| Total | $94,440,000 | $113,626,561 | |

**2.      Registration Statements**

37.      Quest's registration statements effective from November 1999 through 2005 included and/or incorporated by reference the consolidated financial statements as well as the misrepresentations in Quest's Forms 10-K and 10-Q, and its proxy statements.  These registration statements include one Form S-1, one Form S-3, and 11 Forms S-8, which were filed primarily in connection with Quest's acquisitions during the period.

**3.      Proxy Statements**

38.      In 2000 and 2001, Quest's proxy statements falsely disclosed that the option grants to its named executive officers were made at fair market value on the date of grant.  In addition, the 2000 proxy statement falsely represented that options to Quest's employees were granted at fair market value on the date of grant.  These proxy statements were also materially misleading because they failed to disclose that Quest granted backdated, in-the-money options.

**4.      The Individual Defendants' Roles in Quest's Public Filings**

39.      During the relevant period, Smith signed the following public filings:

- Forms 10-K for fiscal years 1999 through 2005;
- Letters to shareholders in the 2000 and 2001 proxy statements;
- Forms S-8 filed on November 22, 1999, February 4, 2000, May 26, 2000, November 9, 2000, February 14, 2002, February 6, 2003, July 15, 2003, March 25, 2004, June 23, 2004, June 1, 2005, and July 14, 2005;
- Power of attorney included in Form S-1 filed on February 22, 2000;
- Form S-3 filed on September 26, 2000; and
- Sarbanes-Oxley Section 302 certifications in Forms 10-K from 2002 through 2005.

40.   During the relevant period, Laskey signed the following public filings:
- Form 10-K for fiscal year 1999;
- Forms 10-Q filed in 2000; and
- Power of attorney included in Form S-1 filed on February 22, 2000, Form S-3 filed on September 26, 2000, and Forms S-8 filed on November 22, 1999, February 4, 2000, May 26, 2000, and November 9, 2000.

41.   During the relevant period, Brooks signed the following public filings:
- Forms 10-K for fiscal years 2000 through 2005;
- Forms 10-Q from the third quarter 2001 through 2005; and
- Power of attorney included in Form S-3 filed on September 26, 2000 and Forms S-8 filed on November 9, 2000, February 14, 2002, February 6, 2003, July 15, 2003, March 25, 2004, June 23, 2004, June 1, 2005, and July 14, 2005.

**5.   Misrepresentations to Auditors**

42.   During the relevant period, Smith, Laskey, and Brooks signed management representation letters to Quest's outside auditors in connection with

the annual audits and quarterly reviews that contained false and misleading statements and omissions. These letters falsely represented that Quest's financial statements were presented in conformity with GAAP, that there had been no fraud involving management or employees who played significant roles in internal controls, and that the company had disclosed all information related to stock option grants.

43.    Beginning in April 2001, the letters falsely represented that all stock options were made with an exercise price equal to fair market value of Quest stock on the date of grant and that "all required approvals had been received for stock option grants as of the date of grant." These disclosures were materially misleading because Smith and Brooks were aware of the backdating at Quest and that UWCs with false grant dates were provided to the auditors, but they did not disclose this information to the auditors.

**E.    The Individual Defendants Benefited From the Fraud**

44.    Smith, Laskey, and Brooks personally benefited from the fraud by receiving backdated options that were in-the-money by approximately $10.1 million (Smith), $98,000 (Laskey), and $270,000 (Brooks).

45.    Smith did not exercise any backdated options, which were repriced as a result of Quest's internal investigation. Laskey's options expired. By exercising certain backdated options, Brooks profited from backdated options by a total of $69,550, $34,775 of which he reimbursed to Quest as a result of its internal investigation.

46.    Smith, Laskey, and Brooks filed false Forms 4 and 5 with the Commission, which misreported the grant dates of stock options they received and the expiration dates of those options.

## FIRST CLAIM FOR RELIEF

### FRAUD IN THE OFFER OR SALE OF SECURITIES

### Violations of Sections 17(a)(2) and 17(a)(3) of the Securities Act

**(Against All Defendants)**

47.   The Commission realleges and incorporates by reference ¶¶ 1 through 46 above.

48.   Quest, Smith, Laskey, and Brooks, and each of them, by engaging in the conduct described above, directly or indirectly, in the offer or sale of securities by the use of means or instruments of transportation or communication in interstate commerce or by the use of the mails:

     a.    obtained money or property by means of untrue statements of a material fact or by omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

     b.    engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchaser.

49.   By engaging in the conduct described above, Quest, Smith, Laskey, and Brooks violated, and unless restrained and enjoined will continue to violate, Sections 17(a)(2) and 17(a)(3) of the Securities Act, 15 U.S.C. § 77q(a)(2) and 77q(a)(3).

## SECOND CLAIM FOR RELIEF

### PROXY VIOLATIONS

**Violations of Section 14(a) of the Exchange Act and Rule 14a-9 thereunder**

**(Against Quest and Smith)**

50.   The Commission realleges and incorporates by reference ¶¶ 1 through 49 above.

51.   Quest and Smith, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, knowingly, recklessly or negligently, solicited proxies by means of a proxy statement, form of proxy, notice of meeting or other

communication, written or oral, containing statements which, at the time and in light of the circumstances under which they were made, were false and misleading with respect to material facts, or omitted to state material facts necessary in order to make the statements therein not false or misleading or necessary to correct statements in earlier communications with respect to the solicitation of the proxy for the same meeting or subject matter which was false or misleading.

52. By engaging in the conduct alleged above, Quest and Smith violated, and unless restrained and enjoined will continue to violate, Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a), and Rule 14a-9 thereunder, 17 C.F.R. § 240.14a-9.

## THIRD CLAIM FOR RELIEF
### FALSIFICATION OF RECORDS
#### Violations of Sections 13(b)(5) of the Exchange Act
#### and Rule 13b2-1 thereunder
#### (Against Smith, Laskey, and Brooks)

53. The Commission realleges and incorporates by reference ¶¶ 1 through 52 above.

54. Smith, Laskey, and Brooks, directly or indirectly, falsified or caused to be falsified Quest's books, records and accounts subject to Section 13(b)(2)(A) of the Exchange Act, 15 U.S.C. § 78m(b)(2)(A).

55. By engaging in the conduct alleged above, Smith, Laskey, and Brooks violated, and unless restrained and enjoined will continue to violate, Section 13(b)(5) of the Exchange Act, 15 U.S.C. § 78m(b)(5), and Rule 13b2-1 thereunder, 17 C.F.R. § 240.13b2-1.

## FOURTH CLAIM FOR RELIEF
### FALSE STATEMENT TO ACCOUNTANTS
#### Violations of Exchange Act Rule 13b2-2
#### (Against Smith, Laskey, and Brooks)

56. The Commission realleges and incorporates by reference ¶¶ 1 through 55 above.

57. Smith, Laskey, and Brooks, directly or indirectly, (i) made, or caused to be made, materially false or misleading statements or (ii) omitted to state, or caused others to omit to state, material facts necessary in order to make statements made, in light of the circumstances under which they were made, not misleading, to an accountant in connection with an audit, review or examination of financial statements or the preparation or filing of a document or report required to be filed with the Commission.

58. By engaging in the conduct alleged above, Smith, Laskey, and Brooks violated, and unless restrained and enjoined will continue to violate, Exchange Act Rule 13b2-2, 17 C.F.R. § 240.13b2-2.

## FIFTH CLAIM FOR RELIEF

### FALSE CERTIFICATION

### Violations of Exchange Act Rule 13a-14

### (Against Smith)

59. The Commission realleges and incorporates by reference ¶¶ 1 through 58 above.

60. Smith certified in each annual report filed by Quest from 2002 through 2005 that, among other things, he reviewed each of these reports and, based on his knowledge, these reports (i) did not contain any untrue statement of material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading and (ii) included financial statements and other financial information which fairly presented, in all material respects, Quest's financial condition, results of operations and cash flows.

61. By engaging in the conduct alleged above, Smith violated, and unless restrained and enjoined will continue to violate, Exchange Act Rule 13a-14, 17

1   C.F.R. § 240.13a-14.

2                       ### SIXTH CLAIM FOR RELIEF

3         **EQUITY BENEFICIAL OWNERSHIP REPORTING VIOLATION**

4      **Violations of Section 16(a) of the Exchange Act and Rule 16a-3 thereunder**

5                    **(Against Smith, Laskey, and Brooks)**

6         62.   The Commission realleges and incorporates by reference ¶¶ 1 through

7   61 above.

8         63.   Section 16(a) of the Exchange Act, 15 U.S.C. § 78p(a), and Rule 16a-

9   3 thereunder, 17 C.F.R. § 240.16a-3, require officers, directors and beneficial

10  owners of more than ten percent of any class of equity security registered pursuant

11  to Section 12 of the Exchange Act, 15 U.S.C. § 78*l*, to file periodic reports

12  disclosing any change of beneficial ownership of those securities.

13        64.   Smith, Laskey, and Brooks failed to accurately report changes of

14  beneficial ownership of their Quest securities by filing Forms 4 and 5 with the

15  Commission that contained false or misleading statements with regard to their

16  options' grant dates and expiration dates.

17        65.   By engaging in the conduct alleged above, Smith, Laskey, and Brooks

18  violated, and unless restrained and enjoined will continue to violate, Section 16(a)

19  of the Exchange Act, 15 U.S.C. § 78p(a), and Rule 16a-3 thereunder, 17 C.F.R. §

20  240.16a-3.

21                      ### SEVENTH CLAIM FOR RELIEF

22              **VIOLATIONS OF COMMISSION PERIODIC**

23                   **REPORTING REQUIREMENTS**

24            **Violations of Section 13(a) of the Exchange Act,**

25           **and Rules 12b-20, 13a-1, and 13a-13 thereunder**

26                           **(Against Quest)**

27        66.   The Commission realleges and incorporates by reference ¶¶ 1 through

28  65 above.

67.   By filing with the Commission materially false and misleading periodic reports, including annual and quarterly reports on Forms 10-K and 10-Q for fiscal years 1999 through 2005, Quest violated, and unless restrained and enjoined will continue to violate, Section 13(a) of the Exchange Act, 15 U.S.C. § 78m(a), and Rules 12b-20, 13a-1, and 13a-13 thereunder, 17 C.F.R. §§ 240.12b-20, 240.13a-1, and 240.13a-13.

**EIGHTH CLAIM FOR RELIEF**

**VIOLATIONS OF COMMISSION PERIODIC**

**REPORTING REQUIREMENTS**

**Aiding and Abetting Violations of Section 13(a) of the Exchange Act,**

**and Rules 12b-20, 13a-1, and 13a-13 thereunder**

**(Against Smith, Laskey, and Brooks)**

68.   The Commission realleges and incorporates by reference ¶¶ 1 through 67 above.

69.   Quest violated Section 13(a) of the Exchange Act, 15 U.S.C. § 78m(a), and Rules 12b-20, 13a-1, and 13a-13 thereunder, 17 C.F.R. §§ 240.12b-20, 240.13a-1, and 240.13a-13, by filing with the Commission materially false and misleading periodic reports, including annual and quarterly reports on Forms 10-K and 10-Q for the fiscal years from 1999 through 2005.

70.   Smith, Laskey, and Brooks knowingly provided substantial assistance to Quest's violation of Section 13(a) of the Exchange Act, 15 U.S.C. § 78m(a), and Rules 12b-20, 13a-1, and 13a-13 thereunder, 17 C.F.R. §§ 240.12b-20, 240.13a-1, and 240.13a-13.

71.   By engaging in the conduct described above and pursuant to Section 20(e) of the Exchange Act, 15 U.S.C. § 78t(e), Smith, Laskey, and Brooks aided and abetted Quest's violations, and unless restrained and enjoined will continue to aid and abet violations, of Section 13(a) of the Exchange Act, 15 U.S.C. § 78m(a), and Rules 12b-20, 13a-1, and 13a-13 thereunder, 17 C.F.R. §§ 240.12b-20,

1 | 240.13a-1, and 240.13a-13.

2 | ### NINTH CLAIM FOR RELIEF

3 | ### RECORD KEEPING VIOLATIONS

4 | **Violations of Section 13(b)(2)(A) of the Exchange Act**

5 | **(Against Quest)**

6 | 72.   The Commission realleges and incorporates by reference ¶¶ 1 through
7 | 71 above.

8 | 73.   By failing to make or keep books, records and accounts that in
9 | reasonable detail accurately and fairly reflected its transactions and disposition of
10 | its assets, Quest violated, and unless restrained and enjoined will continue to
11 | violate, Section 13(b)(2)(A) of the Exchange Act, 15 U.S.C. § 78m(b)(2)(A).

12 | ### TENTH CLAIM FOR RELIEF

13 | ### RECORD KEEPING VIOLATIONS

14 | **Aiding and Abetting Violations of Section 13(b)(2)(A) of the Exchange Act**

15 | **(Against Smith, Laskey, and Brooks)**

16 | 74.   The Commission realleges and incorporates by reference ¶¶ 1 through
17 | 73 above.

18 | 75.   Quest violated Section 13(b)(2)(A) of the Exchange Act, 15 U.S.C. §
19 | 78m(b)(2)(A), by failing to make or keep books, records and accounts that in
20 | reasonable detail accurately and fairly reflected its transactions and disposition of
21 | its assets.

22 | 76.   Smith, Laskey, and Brooks knowingly provided substantial assistance
23 | to Quest's violation of Section 13(b)(2)(A) of the Exchange Act, 15 U.S.C. §
24 | 78m(b)(2)(A).

25 | 77.   By engaging in the conduct described above and pursuant to Section
26 | 20(e) of the Exchange Act, 15 U.S.C. § 78t(e), Smith, Laskey, and Brooks aided
27 | and abetted Quest's violations, and unless restrained and enjoined will continue to
28 | aid and abet violations, of Section 13(b)(2)(A) of the Exchange Act, 15 U.S.C. §

1  78m(b)(2)(A).

## ELEVENTH CLAIM FOR RELIEF
### INTERNAL CONTROL VIOLATIONS
**Violations of Section 13(b)(2)(B) of the Exchange Act**

**(Against Quest)**

78.    The Commission realleges and incorporates by reference ¶¶ 1 through 77 above.

79.    By failing to devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that transactions were recorded as necessary to permit preparation of financial statements in conformity with GAAP and to maintain accountability of assets, Quest violated, and unless restrained and enjoined will continue to violate, Section 13(b)(2)(B) of the Exchange Act, 15 U.S.C. § 78m(b)(2)(B).

## TWELFTH CLAIM FOR RELIEF
### INTERNAL CONTROLS VIOLATIONS
**Aiding and Abetting Violations of Sections 13(b)(2)(B) of the Exchange Act**

**(Against Smith, Laskey, and Brooks)**

80.    The Commission realleges and incorporates by reference ¶¶ 1 through 79 above.

81.    Quest violated Section 13(b)(2)(B) of the Exchange Act, 15 U.S.C. § 78m(b)(2)(B), by failing to devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that transactions were recorded as necessary to permit preparation of financial statements in conformity with GAAP and to maintain the accountability of assets.

82.    Smith, Laskey, and Brooks knowingly provided substantial assistance to Quest's violation of Section 13(b)(2)(B) of the Exchange Act, 15 U.S.C. § 78m(b)(2)(B).

83.    By engaging in the conduct described above and pursuant to Section

1   20(e) of the Exchange Act, 15 U.S.C. § 78t(e), Smith, Laskey, and Brooks aided

2   and abetted Quest's violations, and unless restrained and enjoined will continue to

3   aid and abet violations, of Section 13(b)(2)(B) of the Exchange Act, 15 U.S.C. §

4   78m(b)(2)(B).

5                              **PRAYER FOR RELIEF**

6          WHEREFORE, the Commission respectfully requests that the Court:

7          (a)    Issue findings of fact and conclusions of law that Defendants

8   committed the alleged violations.

9          (b)    Issue judgment, in a form consistent with Rule 65(d) of the Federal

10   Rules of Civil Procedure, permanently enjoining Quest, its agents, servants,

11   employees, attorneys, and those persons in active concert or participation with it,

12   who receive actual notice of the order by personal service or otherwise, from

13   violating Sections 17(a)(2) and (a)(3) of the Securities Act, 15 U.S.C. §§ 77q(a)(2)

14   and (a)(3), Sections 13(a), 13(b)(2)(A), 13(b)(2)(B), and 14(a) of the Exchange

15   Act, 15 U.S.C. §§ 78m(a), 78m(b)(2)(A), 78m(b)(2)(B), and 78n(a), and Rules

16   12b-20, 13a-1, 13a-13, and 14a-9 thereunder, 17 C.F.R. §§ 240.12b-20, 240.13a-1,

17   240.13a-13, and 240.14a-9.

18         (c)    Issue judgment, in a form consistent with Rule 65(d) of the Federal

19   Rules of Civil Procedure, (1) permanently enjoining Smith, his agents, servants,

20   employees, attorneys, and those persons in active concert or participation with him,

21   who receive actual notice of the order by personal service or otherwise, from

22   violating Sections 17(a)(2) and (a)(3) of the Securities Act, 15 U.S.C. §§ 77q(a)(2)

23   and (a)(3), Sections 13(b)(5), 14(a), and 16(a) of the Exchange Act, 15 U.S.C. §§

24   78m(b)(5), 78n(a), and 78p(a) and Rules 13a-14, 13b2-1, 13b2-2, 14a-9, and 16a-3

25   thereunder, 17 C.F.R. §§ 240.13a-14, 240.13b2-1, 240.13b2-2, 240.14a-9, and

26   240.16a-3 and from aiding and abetting violations of Sections 13(a), 13(b)(2)(A),

27   and 13(b)(2)(B) of the Exchange Act, 15 U.S.C. §§ 78m(a), 78m(b)(2)(A), and

28   78m(b)(2)(B), and Rules 12b-20, 13a-1, and 13a-13 thereunder, 17 C.F.R. §§

240.12b-20, 240.13a-1, and 240.13a-13, and (2) ordering Smith to pay civil penalties pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), and/or Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3).

(d)     Issue judgment, in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure, (1) permanently enjoining Laskey, his agents, servants, employees, attorneys, and those persons in active concert or participation with him, who receive actual notice of the order by personal service or otherwise, from violating Sections 17(a)(2) and (a)(3) of the Securities Act, 15 U.S.C. §§ 77q(a)(2) and (a)(3), Sections 13(b)(5) and 16(a) of the Exchange Act, 15 U.S.C. §§ 78m(b)(5) and 78p(a), and Rules 13b2-1, 13b2-2, and 16a-3 thereunder, 17 C.F.R. §§ 240.13b2-1, 240.13b2-2, and 240.16a-3 and from aiding and abetting violations of Sections 13(a), 13(b)(2)(A), and 13(b)(2)(B) of the Exchange Act, 15 U.S.C. §§ 78m(a), 78m(b)(2)(A), and 78m(b)(2)(B), and Rules 12b-20, 13a-1, and 13a-13 thereunder, 17 C.F.R. §§ 240.12b-20, 240.13a-1, and 240.13a-13, and (2) ordering Laskey to pay civil penalties pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), and/or Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3).

(e)     Issue judgment, in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure, permanently enjoining Brooks, his agents, servants, employees, attorneys, and those persons in active concert or participation with him, who receive actual notice of the order by personal service or otherwise, from violating Sections 17(a)(2) and (a)(3) of the Securities Act, 15 U.S.C. §§ 77q(a)(2) and (a)(3), Sections 13(b)(5) and 16(a) of the Exchange Act, 15 U.S.C. §§ 78m(b)(5) and 78p(a), and Rules 13b2-1, 13b2-2, and 16a-3 thereunder, 17 C.F.R. §§ 240.13b2-1, 240.13b2-2, and 240.16a-3 and from aiding and abetting violations of Sections 13(a), 13(b)(2)(A), and 13(b)(2)(B) of the Exchange Act, 15 U.S.C. §§ 78m(a), 78m(b)(2)(A), and 78m(b)(2)(B), and Rules 12b-20, 13a-1, and 13a-13 thereunder, 17 C.F.R. §§ 240.12b-20, 240.13a-1, and 240.13a-13; (2) ordering

1  Brooks to pay civil penalties pursuant to Section 20(d) of the Securities Act, 15

2  U.S.C. § 77t(d), and/or Section 21(d)(3) of the Exchange Act, 15 U.S.C. §

3  78u(d)(3); and (3) ordering Brooks to disgorge all ill-gotten gains from his illegal

4  conduct, together with prejudgment interest thereon.

5       (f)     Retain jurisdiction of this action in accordance with the principles of

6  equity and the Federal Rules of Civil Procedure in order to implement and carry

7  out the terms of all orders and decrees that may be entered, or to entertain any

8  suitable application or motion for additional relief within the jurisdiction of this

9  Court.

10      (g)     Grant such other and further relief as this Court may determine to be

11 just and necessary.

12

13 DATED: March   , 2009

14                                        SAM S. PUATHASNANON
                                          Attorney for Plaintiff
15                                        Securities and Exchange Commission

16

17

18

19

20

21

22

23

24

25

26

27

28

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐)<br>SECURITIES AND EXCHANGE COMMISSION | DEFENDANTS<br>QUEST SOFTWARE, INC., VINCENT C. SMITH, JOHN J. LASKEY, and<br>KEVIN E. BROOKS<br><br>Orange County |
|---|---|
| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing<br>yourself, provide same.)<br><br>Sam S. Puathasnanon, Esq.    (323) 965-3998<br>Securities and Exchange Commission<br>5670 Wilshire Boulevard, 11th Floor, Los Angeles, CA 90036 | Attorneys (If Known)<br>See attachment |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☑ 1 U.S. Government Plaintiff    ☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant    ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☐ Yes  ☑ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes  ☑ No   ☐ MONEY DEMANDED IN COMPLAINT: $_____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
See attachment

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☑ 850 Securities/Commodities/ Exchange | | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | | SOCIAL SECURITY |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | IMMIGRATION | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | ☐ 462 Naturalization Application | | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | REAL PROPERTY | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 465 Other Immigration Actions | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | | | | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determination Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 245 Tort Product Liability | | | | |
| | ☐ 290 All Other Real Property | | | | |

## SACV09-0315

**FOR OFFICE USE ONLY:**    Case Number: _____

### AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑No  ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑No  ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply) ☐ A. Arise from the same or closely related transactions, happenings, or events; or
☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☑   Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Quest Software, Inc. - Orange County; Vincent C. Smith - Orange County; John J. Laskey - Orange County; and Kevin E. Brooks - Orange County | |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
     **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Orange County | |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved.

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____   Date   3/12/09

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

**SEC v. Quest Software, Inc., et al.**
**United States District Court – Central District of California**

Attachment to Civil Cover Sheet

## I.(c)    <u>DEFENDANTS' ATTORNEYS</u>

Koji F. Fukumura, Esq.
Cooley Godward Kronish LLP
4401 Eastgate Mall
San Diego, CA 92121-1909
Telephone: (858) 550-6000
***Attorney to Defendant Quest Software, Inc.***

David J. Schindler, Esq.
Latham & Watkins LLP
355 S. Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 485-1234
***Attorney to Defendant Vincent C. Smith***

Robert E. Gooding, Jr., Esq.
Roman E. Darmer, Esq.
Howrey LLP
4 Park Plaza, Suite 1700
Irvine, CA 92614
Telephone: (949) 721-6900
***Attorney to Defendant John J. Laskey***

Wrenn H. Chais, Esq.
Stroock & Stroock & Lavan LLP
2049 Century Park East
Los Angeles, CA 90067-3086
Telephone: (310) 556-5800
***Attorney to Defendant Kevin E. Brooks***

## VI.    <u>CAUSE OF ACTION</u> (Cite the U.S. Civil Statute under which you are filing)

The Complaint alleges violations of the federal securities laws. 15 U.S.C. § 77q(a)(2) & 77q(a)(3); 15 U.S.C. § 78n(a) & 17 C.F.R. § 240.14a-9 (against Quest and Smith); 15 U.S.C. § 78m(b)(5) & 17 C.F.R. § 240.13b2-1 (against Smith, Laskey and Brooks); 17 C.F.R. § 240.13b2-2 (against Smith, Laskey and Brooks); 17 C.F.R. § 240.13a-14 (against Smith); 15 U.S.C. § 78p(a) & 17 C.F.R. §§ 240.16a-3 (against Smith, Laskey and Brooks); 15 U.S.C. § 78m(a) and 17 C.F.R. §§ 240.12b-20, 240.13a-1, 240.13a-13 (against Quest); aiding and abetting violations of 15 U.S.C. § 78m(a) and 17 C.F.R. §§ 240.12b-20, 240.13a-1, 240.13a-13 (against Smith, Laskey and Brooks); 15 U.S.C. § 78m(b)(2)(A) (against Quest); aiding and abetting violations of 15 U.S.C. § 78m(b2)(A) (against Smith, Laskey and Brooks); 15 U.S.C. § 78m(b)(2)(B) (against Quest); and aiding and abetting violations of 15 U.S.C. § 78m(b(2)(B) (against Smith, Laskey and Brooks)

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY**

This case has been assigned to District Judge Andrew Guilford and the assigned discovery Magistrate Judge is Marc Goldman.

The case number on all documents filed with the Court should read as follows:

## SACV09- 315 AG (MLGx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

============================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

[ ] **Western Division**
312 N. Spring St., Rm. G-8
Los Angeles, CA 90012

[X] **Southern Division**
411 West Fourth St., Rm. 1-053
Santa Ana, CA 92701-4516

[ ] **Eastern Division**
3470 Twelfth St., Rm. 134
Riverside, CA 92501

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)        NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

SECURITIES AND EXCHANGE COMMISSION

PLAINTIFF(S)

v.

QUEST SOFTWARE, INC., VINCENT C. SMITH,
JOHN J. LASKEY, and KEVIN E. BROOKS

DEFENDANT(S).

CASE NUMBER

SACV09-0315 AG MLGx

SUMMONS

TO:     DEFENDANT(S): Quest Software, Inc., Vincent C. Smith, John J. Laskey, and Kevin E. Brooks

A lawsuit has been filed against you.

Within __20__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, Sam S. Puathasnanon_____, whose address is SEC/LARO, 5670 Wilshire Boulevard, 11th Floor, Los Angeles, CA 90036_____.  If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

MAR 1 2 2009

Dated: _____

By: _____

LA'REE HORN

Deputy Clerk

(Seal of the Court)

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

FOR OFFICE USE ONLY
FOR OFFICE USE ONLY
FOR OFFICE USE ONLY